IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAKESHIA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 26-48 (MN) |
| | ) | |
| DR. SHAPIRA and FIRST STATE MEDSPA, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Lakeshia Jackson, Pro Se Plaintiff, Wilmington, DE

October 26, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiff Lakeshia Jackson filed this civil rights action against Defendants Dr. Shapira and First State MedSpa (together, "Defendants"). (D.I. 2). Plaintiff appears pro se and has been granted leave to proceed *in forma pauperis*. (D.I. 4). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I. BACKGROUND

Plaintiff is "an African American woman" that began working as a medical assistant for Defendants Dr. Shapira and First State MedSpa in October 2019. (D.I. 2 ¶¶ 5 & 15). At some point during her employ there, Plaintiff "began asking questions and raising concerns about practices she observed in the office." (*Id.* ¶ 16). Those questions largely appear to be centered on health and safety practices employed by Defendants. (*See id.* ¶¶ 29-33 & 37-39). Plaintiff claims that asking those questions led to harassment. Defendants allegedly refused to honor a previously agreed-upon retroactive pay increase (*see id.* ¶¶ 23-27) and mandated (through legal counsel and Dr. Shapira) that Plaintiff "sign a statement requiring her to comply with directives she reasonably believed were unsafe or unlawful" (*id.* ¶ 33). Dr. Shapira also apparently contacted Plaintiff's child's pediatrician without permission after Plaintiff took time off to care for her sick child. (*Id.* ¶¶ 34-36).

At some unspecified later date, the state medical board informed Plaintiff that prescriptions were being issued in her name but without her knowledge. (D.I. 2 ¶ 37). These prescriptions were apparently being used to treat First State MedSpa patients. (*Id.*). Plaintiff eventually filed a report with the medical board concerning Defendants' "unsafe and unlawful practices," and Plaintiff alleges that she was subjected to continued hostilities at work after doing so. (*Id.* ¶¶ 39-40). Plaintiff claims that the medical board suspended Dr. Shapira's medical license following an investigation set off by Plaintiff's report. (*Id.* ¶ 41). Plaintiff does not indicate when that license

suspension became effective or how long it lasted. Plaintiff was ultimately terminated on March 25, 2024. (*Id.* ¶¶ 15 & 40).

After Plaintiff was fired, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL"), alleging discrimination and retaliation because of her race. (*See* D.I. 2 ¶ 8; *see also* D.I. 2-1 at 1). On September 3, 2025, the DDOL issued a right-to-sue notice to Plaintiff. (D.I. 2-1 at 1-2). On January 15, 2026, Plaintiff filed this case, alleging that Defendants discriminated against her on the basis of race, retaliated against her for engaging in a protected activity and subjected her to a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964. (D.I. 2 ¶¶ 1, 43, 47 & 49). Plaintiff seeks compensatory and punitive damages. (*Id.* at 6).

## II. LEGAL STANDARDS

A federal court may dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (cleaned up); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and view them in the light most favorable to a pro se plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds pro se, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening

provision of 28 U.S.C. § 1915, however, the Court must grant Plaintiff leave to amend her complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Dr. Shapira

Plaintiff only asserts claims under Title VII against Dr. Shapira. (*See* D.I. 2 ¶¶ 42-53). Plaintiff alleges that Dr. Shapira "owned, operated, and/or controlled the medical office where Plaintiff was employed." (*Id.* ¶ 6). That may be, but individual employees are not "employers" within the meaning of Title VII and thus cannot be sued for its violation. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996); *see also* 42 U.S.C. § 2000e(a)-(b).

And this principle extends to an individual who owns the company. *Spalla v. Elec. Mfg. Servs. Grp., Inc.*, No. 1:16-821, 2017 WL 569178, at *3 & n.1 (M.D. Pa. Feb. 13, 2017) ("[T]he unanimous consensus among district courts to address the question is that the *Sheridan* analysis applies with equal force to exempt owners, shareholders, and corporate officers from Title VII liability.") (collecting cases); *accord Dearth v. Collins*, 441 F.3d 931, 933-34 (11th Cir. 2006). Because Dr. Shapira is not Plaintiff's "employer" within the meaning of Title VII and no additional facts could alter that conclusion, Plaintiff's claims against Dr. Shapira will be dismissed and with prejudice.[1]

**B. First State MedSpa**

Plaintiff asserts against First State MedSpa claims of discrimination, retaliation and hostile work environment under Title VII. Before turning to the merits, the Court will pause to address what appears to be a glaring procedural issue with Plaintiff's claims.

A plaintiff generally only has ninety (90) days to file a Title VII claim after receiving a notice of right to sue from the EEOC. *See Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024) (noting that the ninety-day period is "strictly construed"). Attached to Plaintiff's Complaint is a "right to sue" letter from the DDOL issued on September 3, 2025. (*See* D.I. 2-1 at 1). Plaintiff does not attach any "right to sue" letter from the EEOC, but she does affirmatively plead that she received one – albeit without specifying on what date. (D.I. 2 ¶ 4). Only an EEOC "right to sue" notice starts the ninety-day period to file suit. *See, e.g.*, *Thomas v. Christiana Health Care Servs.*, C.A. No. 21-746-CFC, 2023 WL 2655680, at *3 (D. Del. Mar. 27, 2023) ("[A] DDOL right to letter cannot unlock the door to federal court; that key only comes in the form of an EEOC right to sue letter."); *Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 814 (10th Cir. 2010) ("[A] state

---

[1] Plaintiff alleges that First State MedSpa was her "employer" under Title VII. (D.I. 2 ¶ 7).

agency's right-to-sue notice does not trigger the federal filing period."). The Court suspects that Plaintiff received her EEOC "right to sue" notice around the same time as her DDOL "right to sue" notice, thus rendering this suit untimely. (*See, e.g.*, D.I. 2 ¶ 14 (raising equitable tolling)). But because the Court cannot determine on this record that Plaintiff sued outside the ninety-day window under Title VII, the Court will screen the claims on the merits.

1. Discrimination Under Title VII

Turning first to discrimination, Plaintiff asserts that First State MedSpa discriminated against her on the basis of race. (*See* D.I. 2 ¶ 45). To state a discrimination claim, plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position she sought to acquire or maintain, (3) she suffered an adverse employment action and (4) the action occurred in circumstances that could give rise to an inference of intentional discrimination. *See Vaughan v. Boeing Co.*, 733 F. App'x 617, 622 (3d Cir. 2018).

Plaintiff alleges that she is black and therefore a member of a protected class (*see* D.I. 2 ¶ 5), and she alleges that she was terminated from her position (*id.* ¶ 40), which is clearly an adverse employment action. *See* 42 U.S.C. § 2000e-2(a)(1). And Plaintiff does also allege – generically – that First State MedSpa treated black employees differently in the form of disrespect, heightened scrutiny and "being spoken to differently." (D.I. 2 ¶ 17). But Plaintiff never plausibly alleges – with facts or otherwise – how that different treatment related to her termination. Indeed, there appears to be no connection whatsoever, as Plaintiff alleges that she was terminated for reporting unsafe practices to the Delaware medical board. (D.I. 2 ¶¶ 38-40). Without more, the Court cannot conclude that Defendants' purported discrimination towards black employees played any role at all in Plaintiff's termination. *See DeBrew v. Red Bull Distrib. Co.*, No. 24-1161, 2024 WL 3416268, at *4 (E.D. Pa. July 15, 2024) (finding that mere allegations of "race discrimination

being a part of the culture" insufficient to infer discrimination was a motivating factor in plaintiff's termination). Plaintiff's discrimination claim against First State MedSpa will be dismissed.

2. Hostile Work Environment Under Title VII

As to Plaintiff's hostile work environment claim against First State MedSpa, a hostile work environment exists when a workplace is so "permeated" with discrimination that the conditions of employment are effectively altered. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a hostile work environment claim based on race, Plaintiff must allege that (1) she was intentionally discriminated against because of her race, (2) the discrimination was severe or pervasive, (3) it detrimentally affected her, (4) it would have detrimentally affected a reasonable person of the same race in her position and (5) there is a basis for vicarious liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "This is a difficult standard to meet." *Belton v. Allegheny Gen. Hosp.*, 703 F. Supp. 3d 685, 692 (W.D. Pa. 2023).

Plaintiff fails to allege "severe" or "pervasive" discrimination to support her hostile work environment claim. Plaintiff generically states that she was "subjected to unequal treatment, exclusion, and lack of professional respect." (D.I. 2 ¶ 16). Such conclusory allegations are insufficient. *See Twombly*, 550 U.S. at 555. Plaintiff does allege that, "as [she] continued to raise questions and concerns [about office practices], the unequal treatment escalated into harassment." (D.I. 2 ¶ 19; *see also id.* ¶¶ 18 & 28). But the "questions and concerns" Plaintiff raised were about Defendants' treatment of patients – not employees (herself or otherwise). (*See id.* ¶¶ 21, 28-33). And the remaining purported harassment – discussing work-related matters in front of other employees, pay issues and contacting Plaintiff's child's pediatrician (*id.* ¶¶ 20, 25-27, 34-36) – all lack any apparent racial basis or motivation. Without severe or pervasive discrimination based on Plaintiff's race, her hostile work environment under Title VII fails and will be dismissed. *See*

*Stucke v. City of Philadelphia*, 685 F. App'x 150, 153 (3d Cir. 2017) ("isolated incidents" and "offhanded comments" not enough to support hostile work environment claim).

3. Retaliation Under Title VII

Finally, Plaintiff asserts a Title VII retaliation claim against First State MedSpa. To state such a retaliation claim, Plaintiff must allege that she engaged in an activity protected by Title VII, that her employer took an adverse employment action against her, and that there exists a causal connection between the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). The protected activity must be the but-for cause of the adverse action – *i.e.*, the adverse action would not have occurred "but for" the plaintiff engaging in the protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Here, Plaintiff alleges that she "reported Defendant's unsafe and unlawful practices to the appropriate Medical Board, engaging in protected activity." (D.I. 2 ¶¶ 39-40). Those complained of "unsafe and unlawful practices" were (1) Defendants requiring Plaintiff to participate in surgical procedures without a licensed nurse present (*id.* ¶¶ 29-33), (2) Defendants requiring Plaintiff to report to work with her sick child (*see id.* ¶¶ 34-35) and (3) Defendants prescribing medication in Plaintiff's name for use by Defendants' patients (*id.* ¶ 37). Assuming these allegations are true, as the Court must at this stage, some of those practices are indeed problematic and likely unlawful. But Plaintiff reporting those issues to the Delaware medical board is not a protected activity under Title VII.[2] *See* 42 U.S.C. § 2000e-3(a). And because Plaintiff specifically alleges that she was fired because of her decision to report those very issues to the medical board (DI. 2 ¶ 40), the Court cannot plausibly infer that engaging in some protected activity under Title VII was the but-for

---

2 These actions may be protected by other statutes. *See, e.g.*, 19 *Del. C.* § 1703.

cause of Plaintiff's termination. *Cf. Nassar*, 570 U.S. at 346-47. Without such causation, Plaintiff's Title VII retaliation claim fails and will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Complaint (D.I. 2) is DISMISSED, with Plaintiff's Title VII claims against Dr. Shapira being dismissed with prejudice. As to all other claims, Plaintiff will be given leave to file an amended pleading. An appropriate order will follow.